UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| Charles Young, Jr.<br>*Plaintiff*,<br><br>v.<br><br>Carolyn McClendon *et al.*,<br> *Defendants*. | Civil No. 22-cv-00710 (KAD)<br><br><br><br><br>July 26, 2022 |

### INITIAL REVIEW ORDER

Kari A. Dooley, United States District Judge:

Plaintiff, Charles Young, Jr. ("Young"), a prisoner currently incarcerated at Bridgeport Correctional Center ("BCC"), filed this civil rights *C*omplaint pursuant to 42 U.S.C. § 1983 and 28 U.S.C. § 2241 against Defendants, Warden Carolyn McClendon and Deputy Warden Jones. Both Defendants are sued in their official capacities only.[1] Young contends that the Defendants were deliberately indifferent to his health by failing to institute and enforce COVID-19 guidelines from the Centers for Disease Control and Prevention ("CDC") and requiring him to clean COVID-infected cells and housing areas without proper training, equipment, and supplies. Young seeks monetary damages, immediate release to the community where he can obtain treatment for breathing difficulties and chronic headaches, and weekly reports from the defendants on outbreaks of the omicron variant of the COVID-19 virus and how the outbreaks are being handled. Within the body of the Complaint, Young also seeks appointment of a public health expert to evaluate

---

[1] In his prayer for relief, Young refers to two other individuals who "potentially" have violated his rights: John Doe 1, a "medical doctor;" and John Doe 2, a "mental health doctor." He does not name these individuals as Defendants, include them in the case caption or description of the parties, or set forth any allegations regarding requests for medical or mental health treatment directed to these providers.

Warden McClendon's handling of COVID-19 cases and confirm that all such cases are properly identified and treated.[2] For the reasons that follow, Young's Complaint is DISMISSED without prejudice. Doc. No. 1.

**Standard of Review**

Under 28 U.S.C. § 1915A, the Court must review prisoner civil complaints and dismiss any portion of the complaint that is frivolous or malicious, that fails to state a claim upon which relief may be granted, or that seeks monetary relief from a defendant who is immune from such relief. *Id.* In reviewing a *pro se* complaint, the Court must assume the truth of the allegations, and interpret them liberally to "raise the strongest arguments [they] suggest[]." *Abbas v. Dixon*, 480 F.3d 636, 639 (2d Cir. 2007); *see also Tracy v. Freshwater*, 623 F.3d 90, 101-02 (2d Cir. 2010) (discussing special rules of solicitude for *pro se* litigants). Although detailed allegations are not required, the complaint must include sufficient facts to afford the defendants fair notice of the claims and the grounds upon which they are based and to demonstrate a right to relief. *Bell Atlantic v. Twombly*, 550 U.S. 544, 555-56 (2007). Conclusory allegations are not sufficient. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570.

Young also seeks habeas corpus relief pursuant to 28 U.S.C. § 2241. A state pretrial detainee may challenge his custody as unlawful under the Constitution in a habeas corpus petition filed pursuant to § 2241. *See Smith v. New Haven Superior Court*, No 3:20-cv-744(KAD), 2020 WL 4284565, at *4 (D. Conn. July 27, 2020) (citing *Nieves v. Farber*, No. 1:2-CV-0990(LJL), 2020 WL 1529454, at *3 (S.D.N.Y. Mar. 30. 2020)). "While 29 U.S.C. [§] 2241 does not by its

---

[2] The Court received Young's Complaint on May 26, 2022, and granted Young's motion to proceed *in forma pauperis* on July 14, 2022.

2

own terms require the exhaustion of state remedies as a prerequisite to the grant of federal habeas relief, decisional law has superimposed such a requirement in order to accommodate principles of federalism." *Id.* (quoting *United States ex rel. Scranton v. State of N.Y.*, 532 F.2d 292, 294 (2d Cir. 1976) (internal quotation marks omitted)). "A petitioner who has not exhausted available [s]tate court or administrative remedies may only seek a writ of habeas corpus pursuant to § 2241 if: (1) he establishes cause for his failure to exhaust and prejudice as a result of the alleged violation of federal law . . . or (2) he demonstrates that the failure to consider his claims will result in a fundamental miscarriage of justice." *Id.* (quoting *Figueroa v. DeVane*, No. 13-CV-4275(SJF), 2014 WL 4906761, at *2 (E.D.N.Y. Sept. 26, 2014) (citations and internal quotation marks omitted)); *see McPherson v. Lamont*, 457 F. Supp. 3d 67, 78 (D. Conn. May 6, 2020) (excusing exhaustion requirement for class action lawsuit because state courts were operating at significantly diminished capacity and the putative class was extremely large).

**Allegations**

Young is confined at BCC. Doc. No. 1 ¶ 10. In October of 2021, Young was assigned a prison job which included handing out food, mopping, wiping tables, and sweeping floors. *Id.* ¶ 11. On December 21, 2021, the Defendants ordered Young to disinfect cells that had been infected with COVID-19. *Id.* ¶ 12. Young was not given the option to decline. *Id.* ¶ 13. He requested training but none was available. *Id.* ¶ 14. He requested cleaning supplies but was given only a spray bottle full of water and one rag. *Id.* ¶ 15. When Young requested an N-95 mask, he was told that none were available but that he would get one "someday." *Id.* ¶ 16.

On January 1, 2022, Young tested positive for COVID-19. *Id.* ¶ 17. Thereafter, he was transferred to an isolation unit at the MacDougall Correctional Institution. *Id.* ¶ 20. Young was

denied any medical or mental health treatment. *Id.* ¶¶ 18; 19. Young was also denied pain medication to relieve his fever, chills, headaches, and muscle pain. *Id.* ¶ 20.

Young returned to BCC on January 14, 2022 without having received any medical treatment. *Id.* He was ordered to resume cleaning COVID-19 infected areas or otherwise face consequences. *Id.* ¶¶ 20; 23. Bleach and cleaning supplies continued to be denied. *Id.* ¶ 20.

Young has resumed his job of cleaning COVID-19 infected areas at BCC out of fear of retaliation by the Defendants. *Id.* ¶ 24. He also fears that he might die if reinfected with COVID-19. *Id.* ¶ 22. The Defendants have been advised that it is "virtually impossible" for prisoners to maintain the necessary social distancing and hygiene to mitigate the transmission of COVID-19. *Id.* ¶ 30.

**Discussion**

Young includes Fourteenth Amendment claims for unconstitutional punishment and unconstitutional conditions of confinement. He first contends that the conditions of confinement at BCC constitute punishment in violation of his rights under the Fourteenth Amendment because the conditions do not comply with CDC guidelines to prevent the ongoing outbreak of COVID-19.[3] Second, Young contends that the conditions of his confinement at BCC establish a deliberate indifference to his health. He seeks damages and injunctive relief under § 1983 and release from

---

[3] Although Young alleges that the inadequate COVID-19 protocols amount to "punishment" as contemplated under *Bell v. Wolfish,* 441 U.S. 520 (1979), he offers no allegations from which a reasonable inference of punitive motive might be inferred as against the named Defendants, or any other unnamed individual involved in his work assignments. Nor are his conclusory allegations that the protocols are not rationally related to a legitimate government purpose sufficient to plead such a claim. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). (stating that legal conclusions and "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements" are insufficient to plausibly state a claim for relief). Accordingly, the Court addresses Young's Fourteenth Amendment claim in the context of deliberate indifference to his health only. However, as indicated *infra.,* Young will have the opportunity to file an amended complaint, to include this claim if he believes there are factual allegations that can support such a claim.

custody under § 2241.

**Section 1983 Claims**

"A pretrial detainee may not be punished at all under the Fourteenth Amendment, whether . . . by deliberate indifference to conditions of confinement, or otherwise." *Darnell v. Pineiro*, 849 F.3d 17, 35 (2d Cir. 2017). To state a deliberate indifference claim, Young first must allege facts showing that the challenged condition "pose[d] an unreasonable risk of serious damage to his health, which includes the risk of serious damage to physical and mental soundness." *Id.* at 30 (quoting *Walker v. Schult*, 717 F.3d 119, 125 (2d Cir. 2013) (internal quotation marks omitted)). "[T]he conditions themselves must be evaluated in light of contemporary standards of decency." *Id.* (citation and internal quotation marks omitted). This inquiry focuses on the "severity and duration" of the conditions, "not the detainee's resulting injury." *Id.* (citing *Willey v. Kirkpatrick*, 801 F.3d 51, 68 (2d Cir. 2015)). Young also must show that "the defendant-official acted intentionally to impose the alleged condition" or that he "recklessly failed to act with reasonable care to mitigate the risk that the condition posed to the pretrial detainee even though the defendant-official knew, or should have known, that the condition posed an excessive risk to health or safety." *Id.* at 35.

"[C]orrectional officials have an affirmative obligation to protect inmates from infectious disease." *Jolly v. Coughlin*, 76 F.3d 468, 477 (2d Cir. 1996). Courts have found that "an inmate can face a substantial risk of serious ham in prison from COVID-19 if a prison does not take adequate measures to counter the spread of the virus." *Chunn v. Edge*, 465 F. Supp. 3d 168, 200-01 (E.D.N.Y. 2020) (citing cases). As Young's claims relate to the spread of the omicron variant of COVID-19, his allegations satisfy the first component of the deliberate indifference test.

5

Young must next show that each Defendant acted intentionally or recklessly failed to act with reasonable care to mitigate the risk of inmates contracting the omicron variant. The Defendants are both supervisory officials, holding the positions of Warden and Deputy Warden. They cannot be held liable merely because they hold these positions. The Second Circuit recently clarified the standard to be applied to a claim of supervisory liability. *Tangreti v. Bachmann*, 983 F.3d 609 (2d Cir. 2020). The Second Circuit adopted the Supreme Court's reasoning in *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), and held that "after *Iqbal*, there is no special rule for supervisory liability. Instead, a plaintiff must plead and prove 'that each Government-official defendant, through the official's own individual actions, has violated the Constitution.'" *Tangreti*, 983 F.3d at 618 (quoting *Iqbal*, 556 U.S. at 676).

Knowledge that unconstitutional acts were occurring is insufficient to state a claim for supervisory liability. "A supervisor's 'mere knowledge . . .' is not sufficient because that knowledge does not amount[] to the supervisor's violating the Constitution." *Id.* at 616-17 (quoting *Iqbal*, 556 U.S. at 677). *See Lopez v. Chappius*, No. 6:17-CV096395 EAW, 2021 WL 85938, at *2 (W.D.N.Y. Mar. 8, 2021) ("Even before *Tangreti*, it was well-established that a supervisor's failure to respond to a letter of complaint does not provide a sufficient basis to find the defendant was personally involved in the deprivation alleged.") (internal quotation marks omitted).

Young must allege facts showing Warden McClendon and Deputy Warden Jones knew about and disregarded an excessive risk to his health. Young does not allege specific facts about either Defendant in his statement of facts. He generally alleges that the Defendants were advised about the difficulties inmates faced. Such knowledge, however, is insufficient to establish personal involvement. Young attributes all actions to "the Defendants," but does not allege that either

Defendant gave him his job assignment, denied him an N-95 mask, or ordered him to return to his job when he was transferred back to BCC after recovering from COVID-19. In his introductory paragraphs, Young alleged that "[t]he 'Warden' has also failed to assure that inmates at [BCC] receive adequate medical treatment recommended by the [CDC] and failed significantly to take appropriate steps to provide adequate hygiene, sanitation, or social distancing at [BCC]." Doc. No. 1 ¶ 1. These allegations appear directed at the Defendants because of the positions they hold, rather than any "deliberate, intentional act" to violate Young's constitutional rights. *Tangreti*, 983 F.3d at 618. Thus, these allegations are insufficient to state a plausible claim.[4] Young must allege facts showing specific actions taken by the Defendants toward him. He has not done so. The Complaint, as alleged, fails to show the personal involvement of either defendant.

In addition, even if the allegations were sufficient to demonstrate that the Defendants' alleged conduct did cause Young's constitutional deprivation, Young's requests for relief on his § 1983 claims fail. Young seeks monetary damages but has named the Defendants in their official capacities only. *See* Doc. No. 1 ¶¶ 8; 9. The Eleventh Amendment prohibits an award of damages against state officials in their official capacities unless the state has waived that immunity or Congress has abrogated it. *Kentucky v. Graham*, 473 U.S. 159, 169 (1995). Section 1983 does not abrogate state sovereign immunity. *Quern v. Jordan*, 440 U.S. 332, 343 (1979). Nor does Young allege facts suggesting that the state has waived immunity in this case. Thus, as both Defendants are state officials, Young cannot obtain damages from either Defendant in their official capacity. All claims for monetary damages against the Defendants in their official capacities are dismissed pursuant to 28 U.S.C. § 1915A(b)(2).

---

[4] The Court notes that it appears unlikely that Warden McClendon or Deputy Warden Jones would be involved in such day-to-day operations as assigning a job to a particular inmate.

Young also seeks permanent injunctive relief. Injunctive relief in cases filed by prisoners regarding prison conditions must be narrowly tailored. "The court shall not approve any prospective relief unless the court finds that such relief is narrowly drawn, extends no further than necessary to correct the violation of the Federal right, and is the least intrusive means necessary to correct the violation of the Federal right." 18 U.S.C. § 3626(a)(1).

Young's claims are based on his allegation that BCC does not comply with CDC guidelines to manage the omicron variant of COVID-19, especially in the areas of social distancing and hygiene, thereby exposing him to possible infection. Specifically, he alleges that the Defendants were deliberately indifferent to his health by requiring him to clean infected cells without proper training, protective equipment, or cleaning supplies. Although Young includes general criticism of the management of BCC and the conditions of all inmates confined there in his introductory paragraphs, he can only assert claims regarding his particular conditions and treatment. *See Berrios v. New York Hous. Auth.*, 564 F.3d 130, 133 (2d Cir. 2009) (self-represented litigant can represent only himself and cannot assert claims on behalf of other persons). For injunctive relief, Young seeks appointment of a public health expert to review the handling of COVID-19 cases and weekly reports on outbreaks of the omicron variant and how any outbreaks are handled. His requests therefore relate to the management of the entire facility and all of its inmates. They are clearly not narrowly tailored to address Young's claims.

Young may file an amended complaint to assert his Fourteenth Amendment claims if he can allege facts demonstrating the personal involvement of each Defendant in the alleged constitutional deprivations. If he intends to proceed with his Fourteenth Amendment claim distinct from his conditions of confinement claim, he must allege facts giving rise to an inference of

8

punitive motive or which demonstrate that the COVID–19 protocols being used have no rational relation to a legitimate governmental purpose. If he continues to seek money damages, he must name the Defendants in their individual capacities. If he continues to seek injunctive relief, it must be narrowly tailored to address Young's particular circumstances.

**Habeas Relief**

Young also seeks habeas relief in the form of an order releasing him from custody. Although habeas corpus relief usually is sought by filing a petition for writ of habeas corpus in a separate action, the Second Circuit has not precluded seeking habeas relief in a civil rights action. *See Thompson v. Choinski*, 525 F.3d 205, 210 (2d Cir. 2008) ("[W]e know of no [basis] for the view that a petitioner may not seek relief under both a habeas statute and § 1983 in a single pleading.").

However, a state prisoner may not include habeas relief in a civil rights action to circumvent the exhaustion requirement for habeas corpus relief. *See Debellis v. Soloman*, No. 19-CV-8730(JMF), 2020 WL 763656, at *5 (S.D.N.Y. Feb. 13, 2020) ("A state prisoner may not circumvent the exhaustion requirement for *habeas corpus* relief by requesting release from custody in a civil action.") (citing *Preiser v. Rodriguez*, 411 U.S. 475, 489-90 (1973)). Before seeking federal habeas relief, Young must exhaust his state court remedies. He can do this by filing a petition for writ of habeas corpus in state court seeking a release for the same reasons sought herein.

The court may dismiss a § 2241 petition *sua sponte* for failure to exhaust state court remedies. *See King v. Demarco*, No. 11-CV-2000(JS), 2011 WL 3471548, at *1 (E.D.N.Y. Aug. 3, 2011) (district court will dismiss § 2241 petition *sua sponte* "where the petitioner fails to

demonstrate his exhaustion or the absence of available state remedies"). A search of the Connecticut Judicial Branch website reveals no state habeas cases filed by Young since his incarceration in December of 2020. Thus, as Young has not exhausted his state court remedies, his request for federal habeas relief is dismissed.

**Orders**

The Fourteenth Amendment claims and the requests for damages and injunctive relief are **DISMISSED** without prejudice. *See* 28 U.S.C. § 1915A(b)(1). Young may file an amended complaint to assert these claims if he can allege facts showing the personal involvement of the Defendants in the alleged constitutional deprivations as well as, if he seeks to pursue his claim of unconstitutional punishment distinct from his conditions of confinement claim, facts which give rise to an inference of punitive intent or which demonstrate that the COVID–19 protocols have no rational relation to a legitimate governmental purpose. If he seeks money damages he must sue the Defendants in their individual capacities. If he re-asserts a claim for injunctive relief, he must narrowly tailor the relief sought to his specific circumstances. Any amended complaint shall be filed on or before August 25, 2022

The request for habeas relief is **DISMISSED** without prejudice for failure to exhaust state court remedies.

**SO ORDERED** at Bridgeport, Connecticut, this 26th day of July 2022.

                                               */s/ Kari A. Dooley*
                                               KARI A. DOOLEY
                                               UNITED STATES DISTRICT JUDGE