UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| CHARLES YOUNG, JR.,                  : | |
|     *Plaintiff*,                           : | |
|                                             : | |
| v.                                   : | CASE NO. 3:22-cv-710 (KAD) |
|                                             : | |
| CAROLYN McCLENDON, et al.,           : | |
|     *Defendants*.                          : | |

**INITIAL REVIEW ORDER RE AMENDED COMPLAINT**

Kari A. Dooley, United States District Judge

    Plaintiff Charles Young, Jr., a pretrial detainee currently incarcerated at Bridgeport Correctional Center ("BCC"), filed the original Complaint in this case pursuant to 42 U.S.C. § 1983 and 28 U.S.C. § 2241. Young named two Defendants, Warden Carolyn McClendon and Deputy Warden Jones in their official capacities only. Young alleged that Defendants were deliberately indifferent to his health by failing to institute and enforce COVID-19 guidelines from the Centers for Disease Control and Prevention ("CDC") and requiring him to clean COVID-infected cells without proper training, equipment, and supplies.

    On July 26, 2022, the Court dismissed the original Complaint without prejudice but permitted Young to file an amended complaint to reassert his Fourteenth Amendment claims if he could allege facts demonstrating the personal involvement of the named Defendants in the alleged constitutional deprivations. The Court also cautioned Young that, if he intended to pursue his claim of unconstitutional punishment, distinct from his conditions of confinement claim, he must allege facts giving rise to an inference of punitive intent or which demonstrate that the COVID-19 protocols have no rational relationship to a legitimate governmental purpose. In addition, the Court dismissed Young's claim for habeas relief. *See* Initial Review Order, Doc. No. 11 at 10.

Young filed an Amended Complaint naming only Warden McClendon as Defendant. Warden McClendon is named in her individual and official capacities. Young incorporates the allegations from the original Complaint and adds new allegations to address the issues raised in the Initial Review Order. Young does not address the issues regarding his request for habeas relief. The Court assumes, therefore, that Young has abandoned the habeas claim. For relief, Young merely asks the Court to reconsider the Initial Review Order in light of the Amended Complaint. Thus, Young appears to seek the same damages and injunctive relief requested in the original Complaint.

**Standard of Review**

Under § 1915A of title 28 of the United States Code, the Court must review prisoner civil complaints and dismiss any portion of the complaint that is frivolous or malicious, that fails to state a claim upon which relief may be granted, or that seeks monetary relief from a defendant who is immune from such relief. *Id.* In reviewing a *pro se* complaint, the Court must assume the truth of the allegations, and interpret them liberally to "raise the strongest arguments [they] suggest[]." *Abbas v. Dixon*, 480 F.3d 636, 639 (2d Cir. 2007); *see also Tracy v. Freshwater*, 623 F.3d 90, 101-02 (2d Cir. 2010) (discussing special rules of solicitude for *pro se* litigants). Although detailed allegations are not required, the complaint must include sufficient facts to afford the defendants fair notice of the claims and the grounds upon which they are based and to demonstrate a right to relief. *Bell Atlantic v. Twombly*, 550 U.S. 544, 555-56 (2007). Conclusory allegations are not sufficient. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570.

**Allegations**

The following allegations are taken from the original Complaint. Young is confined at BCC. Doc. No. 1 ¶ 10. In October 2021, Young was assigned a prison job which included handing out food, mopping, wiping tables, and sweeping floors. *Id.* ¶ 11. On December 21, 2021, Defendants ordered Young to disinfect cells that had been infected with COVID-19. *Id.* ¶ 12. Young was not given the option of declining this duty. *Id.* ¶ 13. He requested training but was told no training was available. *Id.* ¶ 14. He requested cleaning supplies but was given only a spray bottle full of water and one rag. *Id.* ¶ 15. When Young requested an N-95 mask, he was told that none were available but that he would get one "someday." *Id.* ¶ 16.

On January 1, 2022, Young tested positive for COVID-19. *Id.* ¶ 17. Thereafter, he was transferred to an isolation unit at MacDougall Correctional Institution. *Id.* ¶ 20. Young was denied medical and mental health treatment. *Id.* ¶¶ 18, 19. Young also was denied pain medication to relieve fever, chills, headaches, and muscle pain. *Id.* ¶ 20.

Young returned to BCC on January 14, 2022 without having received any medical treatment. *Id.* He was ordered to resume cleaning infected cells or otherwise face consequences. *Id.* ¶¶ 20, 23. Bleach and cleaning supplies continued to be denied. *Id.* ¶ 20.

Young has resumed his job of cleaning COVID-19 infected areas out of fear of retaliation if he refused. *Id.* ¶ 24. He fears that he might die if reinfected. *Id.* ¶ 22. Defendants have been advised that it is "virtually impossible" for persons confined in jail to maintain the necessary social distancing and hygiene to mitigate the transmission of COVID-19. *Id.* ¶ 30.

In the Amended Complaint, Young adds the following allegations. Young told Warden McClendon that BCC had a COVID-19 outbreak and he was concerned for his safety. Doc. No. 12 ¶ 7. Warden McClendon told Young that "no inmates are being moved, if you take the COVID-

19 shot you will be fine." *Id.* ¶ 8. Warden McClendon would not tell Young whether she had received the vaccine. *Id.*

Before this conversation, there were no COVID-19 cases in Young's housing unit and there had been no movement of prisoners. *Id.* ¶ 9. Young had not left the unit for four months. *Id.* He assumes, therefore, that when COVID-19 cases were first reported, the virus had been introduced into the housing unit by correctional staff. *Id.*

Young believes that financial assistance was provided for each facility to purchase COVID-related items including vaccine, gloves, masks, and cleaning materials. *Id.* ¶ 10. However, no cleaning materials were provided to him, as a tier man to prevent the spread of the virus. *Id.* ¶ 11. In addition, the masks provided were hand-made by prisoners from prison clothing. *Id.* When Young complained to Warden McClendon about the lack of bleach for cleaning, she told him to quit his job. *Id.* ¶ 13.

Three days before Young contracted COVID-19, an inmate from the North Wing was transferred to a double-cell in Young's housing unit. *Id.* ¶ 14. The following day, both inmates tested positive and were immediately transferred out of the unit. *Id.* Young was asked to clean the cell. *Id.* He was told there was no bleach, but the cell had to be cleaned anyway because two new prisoners were being transferred to the unit. *Id.* Shortly thereafter, at least twenty inmates in the unit tested positive for COVID-19. *Id.* Half of the inmates were transferred to MacDougall while the rest remained at BCC.[1] *Id.* ¶ 15.

**Discussion**

In the original Complaint, Young alleged Fourteenth Amendment violations including that

---

[1] Young includes allegations relating to his confinement in isolation at MacDougall. As no persons from McDougall are named as Defendants, the Court does not include those allegations.

he was unconstitutionally punished, and he encountered unconstitutional conditions of confinement. He sought damages and injunctive relief from Defendants in their official capacities only. The Court dismissed the requests for relief because the Eleventh Amendment precludes an award of damages against state officials in their official capacities and the requested injunctive relief was not narrowly tailored to address Young's claims. *See* Doc. No. 11 at 7-8. As Young named Warden McClendon in her individual and official capacities in the Amended Complaint, the Court considers whether Young has corrected the identified deficiencies in his Fourteenth Amendment claims. First, Young has not narrowed his request for injunctive relief. Thus, all requests for injunctive relief remain dismissed for the reasons stated in the Initial Review Order.

As to his claims of unconstitutional punishment, Young first alleged that the conditions of confinement at BCC constituted punishment in violation of his rights under the Fourteenth Amendment because the conditions do not comply with CDC guidelines to prevent the ongoing outbreak of COVID-19. On initial review, the Court informed Young that, if he wished to proceed on this claim, as separate from his conditions of confinement claim, he must allege facts which reveal a punitive intent. Alternatively, he must allege facts which demonstrate that the COVID-19 protocols being used have no rational relation to a legitimate governmental purpose thus giving rise to an inference of such intent. *Id.* at 8-9. In the second claim, Young argued that the conditions of his confinement at BCC show a deliberate indifference to his health. As to this claim the Court found that Young had not adequately alleged facts which demonstrated the personal involvement of the named Defendants and informed Young that he must do so. *Id.* at 6-7, 8.

In the Amended Complaint, Young asserts:

> Defendant Warden Carolyn McClendon with the assistance of her employees, were aware of Plaintiff's serious COVID-19 concerns and medical needs in his initial

5

> complaint, but were deliberately indifferent to Plaintiff's need by persisting in an ineffective course of safety protocol treatment which was outside the limits of professional standards. The [D]efendants' deliberate indifference to Plaintiff's medical concerns caused his exposure to COVID-19, his constant pain, and untreated foot condition and caused—still causing unnecessary pain and suffering, in violation of the Constitutional Eighth Amendment prohibition against cruel and unusual punishment.

Doc. No. 12 ¶ 19.[2] Young alleges no facts in the Amended Complaint suggesting that Warden McClendon acted with a punitive intent. Nor has he alleged facts demonstrating that the COVID-19 protocols being used had no rational relationship to a legitimate governmental purpose from which such intent might be inferred. Thus, as Young has failed to correct the deficiencies in his "punishment" claim, that claim remains dismissed. The Court considers the claim in the Amended Complaint to be a restatement of Young's Fourteenth Amendment deliberate indifference claim based upon the conditions of his confinement.

"A pretrial detainee may not be punished at all under the Fourteenth Amendment, whether . . . by deliberate indifference to conditions of confinement, or otherwise." *Darnell v. Pineiro*, 849 F.3d 17, 35 (2d Cir. 2017). To state a deliberate indifference claim, Young first must allege facts showing that the challenged condition "pose[d] an unreasonable risk of serious damage to his health, which includes the risk of serious damage to physical and mental soundness." *Id.* at 30 (quoting *Walker v. Schult*, 717 F.3d 119, 125 (2d Cir. 2013) (internal quotation marks omitted)). "[T]he conditions themselves must be evaluated in light of contemporary standards of decency." *Id.* (citation and internal quotation marks omitted). This inquiry focuses on the "severity and duration" of the conditions, "not the detainee's resulting injury." *Id.* (citing *Willey v. Kirkpatrick*, 801 F.3d 51, 68 (2d Cir. 2015)). Young also must show that "the defendant-official acted

---

[2] Young includes no allegations regarding any complaints of constant pain or a foot condition. Thus, these issues are not part of this action.

intentionally to impose the alleged condition" or that he "recklessly failed to act with reasonable care to mitigate the risk that the condition posed to the pretrial detainee even though the defendant-official knew, or should have known, that the condition posed an excessive risk to health or safety." *Id.* at 35.

"[C]orrectional officials have an affirmative obligation to protect inmates from infectious disease." *Jolly v. Coughlin*, 76 F.3d 468, 477 (2d Cir. 1996). Courts have found that "an inmate can face a substantial risk of serious ham in prison from COVID-19 if a prison does not take adequate measures to counter the spread of the virus." *Chunn v. Edge*, 465 F. Supp. 3d 168, 200-01 (E.D.N.Y. 2020) (citing cases). As Young complains of prison conditions which inadequately protect against or even affirmatively contribute to the risk posed by the virus, his allegations satisfy the first component of the deliberate indifference test that the conditions created a sufficiently serious risk of harm.

Young must also allege that Defendant acted intentionally or recklessly failed to act with reasonable care to mitigate the risk of him contracting the virus. Although Defendant McClendon is a supervisory official, she cannot be held liable merely because she holds this position under a theory of *respondeat superior.* To state a claim for supervisory liability, "a plaintiff must plead and prove 'that each Government-official defendant, through the official's own individual actions, has violated the Constitution.'" *Tangreti v. Bachmann*, 983 F.3d 609, 618 (2d Cir. 2020) (quoting *Ashcroft v. Iqbal*, 556 U.S.662, 676 (2009)).

Further, knowledge that unconstitutional acts were occurring is insufficient to state a claim for supervisory liability. "A supervisor's 'mere knowledge . . .' is not sufficient because that knowledge does not amount[] to the supervisor's violating the Constitution." *Id.* at 616-17 (quoting

*Iqbal*, 556 U.S. at 677). Young must allege facts showing that Warden McClendon knew about and disregarded an excessive risk to his health.

Young alleges that he spoke to Warden McClendon about his COVID-related concerns. She told him that inmates would not be moved for COVID-related concerns and advised him to get the vaccine. When Young complained to Warden McClendon about the lack of bleach for cleaning, she told him to quit his job. These are the only allegations directly attributed to Warden McClendon. As in the original Complaint, Young does not allege that Warden McClendon ordered him to clean the COVID-infected cell without bleach, denied him personal protective equipment, or threatened him if he refused to perform the job. Instead, he alleges that she told him to quit the job if he was unwilling to clean the cells without bleach. These allegations are insufficient to plausibly allege that Warden McClendon acted intentionally or recklessly failed to act with reasonable care to mitigate Young's chances of contracting COVID-19.

As Young still has not alleged facts showing the personal involvement of Warden McClendon, the Amended Complaint is dismissed pursuant to 28 U.S.C. § 1915A(b)(1).

**Orders**

The Amended Complaint is **DISMISSED without prejudice**. *See* 28 U.S.C. §1915A(b)(1).

**SO ORDERED** this 22nd day of September 2022 at Bridgeport, Connecticut.

                                         */s/ Kari A. Dooley*
                                         KARI A. DOOLEY
                                         UNITED STATES DISTRICT JUDGE